# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PAMELA CRAWFORD, on behalf of herself and all others similarly situated,<br><br>                            Plaintiff,<br>  vs.<br><br><br>BEACHBODY, LLC,<br>                            Defendant. | CASE NO. 14cv1583-GPC(KSC)<br><br>**ORDER GRANTING DEFENDANT'S MOTION TO CHANGE VENUE AND TRANSFER THE CASE TO THE UNITED STATE DISTRICT COURT FOR THE CENTRAL DISTRICT OF CALIFORNIA; AND DENYING PLAINTIFF'S MOTION TO STRIKE AFFIRMATIVE DEFENSES FROM DEFENDANT'S ANSWER**<br><br>[Dkt. Nos. 15, 17.] |

Before the Court is Defendant's motion to change venue to transfer this action to the United States District Court for the Central District of California. (Dkt. No. 15.) Plaintiff filed an opposition and Defendant filed a reply. (Dkt. Nos. 19, 22.) Plaintiff also filed a motion to strike affirmative defenses of Defendant's answer. (Dkt. No. 17.) Defendant filed an opposition and Plaintiff replied. (Dkt. Nos. 21, 24.) Based on the reasoning below, the Court GRANTS Defendant's motion to change venue and transfers the case to the United States District Court for the Central District of California. Accordingly, the Court DENIES without prejudice Plaintiff's motion to strike affirmative defenses from Defendant's answer.

/ / / /

## Background

On July 1, 2014, Plaintiff Pamela Crawford filed a putative class action complaint alleging violations of the California False Advertising law; California Consumers Legal Remedies Act; Unfair Competition Law; Breach of Express Warranty; and Breach of Implied Warranty of Fitness as to Defendant Beach Body's anti-aging skincare product under the name Derm Exclusive featuring a product called Fill & Freeze. (Dkt. No. 1, Compl.) Defendant marketed this product through websites, videos and television infomercials as an "instant wrinkle eraser." (Id. ¶ 1.) It claims that Fill & Freeze not only "eliminates the appearance of wrinkles . . . instantly," but also provides long lasting therapeutic results by "promot[ing] cell renewal." (Id.) Beachbody also claims that with pads, "serum," and a moisturizer, Fill & Freeze delivers results "as good as – or even better than – the top in-office cosmetic procedures." (Id.) On April 21, 2013, Plaintiff ordered and paid for the Derm Exclusive 4-Piece kit which contained the Fill & Freeze product through the internet via Beachbody's website. (Id. ¶¶ 22, 23; Dkt. No. 15-2, Gelfand Decl. ¶ 4.)

At the final page of placing an order, she was required to click an orange box containing the words "Place Order." Immediately above the "Place Order" box, there was language that said "By clicking *Place Order* below, you are agreeing that you have read and understand the Beachbody Purchase Terms and Conditions, and Team Beachbody Terms and Conditions." The words "Terms and Conditions" were in blue font, while the surrounding language was in grey font, and were hyperlinked to the actual Terms and Conditions. The effect of this was that a purchaser who clicked the blue "Terms and Conditions" language was shown the Terms and Conditions in a new window that opened on their screen in front of other windows that were already open. A purchaser could then navigate through the written Terms and Conditions. (Id. ¶¶ 6-8, Ex. B.)

The first paragraph of the Terms and Conditions provided in all capital letters: "BY USING THIS WEB SITE OR ANY WEB SITE OF BEACHBODY, LLC, AND

1  TEAM BEACHBODY, AND/OR PLACING AN ORDER FOR BEACHBODY,
2  LLC'S PRODUCTS OR SERVICES, YOU AGREE TO BE BOUND AND ABIDE BY
3  BY [sic] THESE TERMS AND CONDITIONS AND ANY AMENDMENTS
4  THERETO, . . ." Users are also advised, "IF YOU DO NOT AGREE TO THE TERMS
5  AND CONDITIONS, PLEASE DO NOT USE THE SITE OR ORDER OR USE
6  BEACHBODY'S PRODUCTS OR SERVICES." (Id. ¶ 8, Ex. C.) The Terms and
7  Conditions to which Plaintiff agreed when she completed her online purchase
8  contained a forum selection clause which provided,

**Applicable Law and Venue**

> These Terms and Conditions shall be governed by and construed in accordance with the laws of the State of California, without resort to its conflict of law provisions. You agree that any action at law or in equity arising out of or relating to the Terms and Conditions or your use of the Sites shall be filed only in the Superior Court of Los Angeles County, California, or the United States District Court for the Central District of California, and except as stated herein you hereby irrevocably and unconditionally consent and submit to the exclusive jurisdiction of such courts over any suit, action, or proceeding arising out of the Terms and Conditions.

(Id., Ex. C at 18.)

Defendant seeks to enforce the forum selection provision in the Beachbody and Team Beachbody Terms and Conditions of use where the parties allegedly agreed to venue in the Central District of California. Plaintiff opposes for numerous reasons.

## Discussion

**A.    Motion to Transfer Pursuant to 28 U.S.C. § 1404(a)**

The Ninth Circuit applies federal law to the interpretation and enforcement of forum selection clauses.[1] Manetti-Farrow, Inc. v. Gucci America, Inc., 858 F.2d 509, 513 (9th Cir. 1988) (diversity case); Doe 1 v. AOL, LLC, 552 F.3d 1077, 1081 (9th Cir. 2009) (class action alleging violations of the federal electronic privacy law and various violations of California law). 28 U.S.C. § 1404(a) provides: "(a) For the convenience

---

[1] The Court notes that, in her opposition, Plaintiff improperly applies California law.

of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a).

### 1.   Validity of Forum Selection Clause

First, Plaintiff challenges the validity of the forum selection clause arguing there was no mutual assent because she does "not recall seeing or agreeing to any terms and conditions on the BeachBody website." (Dkt. No. 19-2, Crawford Decl. ¶ 4.) Defendant disagrees.

The principles of contract still apply to new commerce conducted on the Internet which require mutual assent. See Nguyen v. Barnes & Noble Inc., 763 F.3d 1171, 1175 (9th Cir. 2014) (citing Register.com, Inc. v. Verio, Inc., 356 F.3d 393, 403 (2d Cir. 2004)). Contracts on the internet consist of either a "clickwrap" or "browsewrap" agreement. A "browsewrap" agreement does not require the user to expressly manifest assent to the terms and conditions; it contains a notice, through a hyperlink, posted somewhere on the website. See Nguyen, 763 F.3d at 1176; In re Zappos.com, Inc., Customer Data Sec. Breach Litigation, 893 F. Supp. 2d 1058, 1073 (D. Nev. Sept. 27, 2012. By visiting the website, the user agrees to the Terms of Use not listed on the site but available only by clicking a hyperlink. Nguyen, 763 F.3d at 1176. Since there is no affirmative action required by the website user to agree to the terms and conditions of a contract, "the determination of the validity of the browsewrap contract depends on whether the user has actual or constructive knowledge of a websites' terms and conditions." Id. at 1176.

A "clickwrap" agreement requires users to expressly manifest assent to the terms by, for example, clicking an "I accept" button. It "presents the user with a message on his or her computer screen, requiring that the user manifest his or her assent to the terms of the license agreement by clicking on an icon. The product cannot be obtained or used unless and until the icon is clicked." Specht v. Netscape Commc'ns Corp., 306 F.3d 17, 22 n. 4 (2d Cir. 2002) (quoting Specht, 150 F. Supp. 2d at 593-94). Clickwrap

1 agreements have been held to constitute mutual assent. See Treiber & Straub, Inc. v.
2 UPS, 474 F.3d 379, 382 (7th Cir. 2007) (finding a clickwrap process to have "provided
3 adequate notice" to customers when it required clicking assent, the terms repeated the
4 disclaimer of liability several times and referred to the pertinent parts of the contract
5 that was also available on the business's website); Van Tassell v. United Marketing
6 Group., LLC, 795 F. Supp. 2d 770, 790 (N.D. Ill. 2011) (because clickwrap agreements
7 require affirmative action on the part of the user to manifest assent, courts regularly
8 uphold their validity when challenged).

9       The validity of the browsewrap agreement turns on whether the website puts a
10 reasonably prudent user on inquiry notice of the terms of the contract.  Specht, 306
11 F.3d at 30–31.  The conspicuousness and placement of the "Terms of Use" hyperlink,
12 other notices given to users of the terms of use, and the website's general design all
13 contribute to whether a reasonably prudent user would have inquiry notice of a
14 browsewrap agreement. Nguyen, 763 F.3d at 1177.  Courts have held that a modified
15 or hybrid clickwrap/browsewrap agreement constitutes a binding contract where the
16 user is provided with an opportunity to review the terms of service in the form of a
17 hyperlink immediately under the "I Accept" button and clicks that button.  Swift v.
18 Zynga Game Network, Inc., 805 F. Supp. 2d 904, 911-12 (N.D. Cal. 2011); see also
19 Fteja v. Facebook, Inc., 841 F. Supp. 2d 829, (S.D.N.Y. 2012) (right below the "Sign
20 Up" button, the following sentence is displayed, "By clicking Sign Up, you are
21 indicating that you have read and agree to the Terms of Service" which was reasonably
22 communicated to the user).

23       This case involves a modified or hybrid clickwrap/browsewrap agreement.  In
24 order to complete the purchase, Plaintiff had to click an orange button that read
25 "PLACE ORDER".  (Dkt. No. 15-2, Gelfand Decl. ¶ 6.)  The following sentence
26 appears immediately above the "PLACE ORDER" button, "By clicking Place Order
27 below, you are agreeing that you have read and understand the Beachbody Purchase
28 Terms and Conditions, and Team Beachbody Terms and Conditions." (Dkt. No. 15-5,

1  Gelfand Decl., Ex. B.)  The terms "Terms and Conditions" were in blue font while the
2  rest of the language in the sentence was in grey font, which was hyperlinked to the full
3  text of the Terms and Conditions.  (Id. ¶ 6.)  Upon clicking the Terms and Conditions
4  hyperlink, a separate window would have opened up presenting the full text of the
5  Terms and Conditions.  (Id. ¶ 7.)  Accordingly, the Court concludes that the parties
6  agreed to Terms and Conditions of Use, including the forum selection clause.  See
7  Swift, 805 F. Supp. 2d at 911-12; Fteja, 841 F. Supp. 2d at 829.

### 2.   Enforcement of the Forum Selection Clause

In a case involving a forum-selection clause, § 1404(a) requires that a forum-selection clause be "given controlling weight in all but the most exceptional cases."  Atlantic Marine Cons. Co., Inc. v. U.S. Dist. Court for the Western Dist. of Texas, 134 S. Ct. 568, 579 (2013).[2]  "When the parties have agreed to a valid forum-selection clause, a district court should ordinarily transfer the case to the forum specified in that clause.  Only under extraordinary circumstances unrelated to the convenience of the parties should a § 1404(a) motion be denied."  Id. at 581.  A valid forum-selection clause bargained for by the parties, protects their legitimate expectations and further vital interests of the justice system."  Id.; Murphy v. Schneider Nat'l, Inc., 362 F.3d 1133, 1140 (9th Cir. 2004) (forum selection clauses are presumptively valid).

A valid forum-selection clause when the parties contract for it alters the § 1404 analysis in three ways.  Atlantic Marine Cons. Co., Inc., 134 S. Ct. at 581-82.  "First, the plaintiff's choice of forum merits no weight."  Id. at 582.  Second, a court evaluating a defendant's § 1404(a) motion to transfer based on a forum-selection clause should not consider arguments about the parties' private interests.  Id.  "Third, when a party bound by a forum-selection clause flouts its contractual obligation and files suit

---

[2] The proper analysis in a case involving a forum-selection clause is through a transfer pursuant to 28 U.S.C. § 1404(a), and not a motion to dismiss under Federal Rule of Civil Procedure 12(b)(3) or 28 U.S.C. § 1406(a).  Atlantic Marine Const. Co., Inc., 134 S. Ct.  at 575.

in a different forum, a § 1404(a) transfer of venue will not carry with it the original venue's choice-of-law rules—a factor that in some circumstances may affect public-interest considerations." Id.

However, a "choice-of-forum clause should be held unenforceable if enforcement would contravene a strong public policy of the forum in which suit is brought." Richards v. Lloyd's of London, 135 F.3d 1289, 1293 (9th Cir. 1998) (citing M/S Bremen v. Zapata Off–Shore Co., 407 U.S. 1, 15 (1972)). A forum selection clause is "prima facie valid and should be enforced unless enforcement is shown by the resisting party to be 'unreasonable' under the circumstances." M/S Bremen v. Zapata Off–Shore Co., 407 U.S. 1, 10 (1972).

A forum-selection clause is "unreasonable" if: (1) the inclusion of the clause in the agreement was the product of "fraud, undue influence or overweening bargaining power"; (2) the party wishing to repudiate the clause would effectively be deprived of his or her day in court were the clause enforced; and (3) "enforcement would contravene a strong public policy of the forum in which suit is brought." M/S Bremen, 407 U.S. at 12-18; Murphy, 362 F.3d at 1140. The "unreasonableness" exception to enforcement of a forum selection clause is to be narrowly construed. Argueta v. Banco Mexicano, S.A., 87 F.3d 320, 325 (9th Cir. 1996). In addition, the party challenging a forum selection clause bears a "heavy burden of showing that its enforcement would be unreasonable, unfair, or unjust", M/S Bremen, 407 U.S. at 15, and "that trial in the chosen forum would be so difficult and inconvenient that the party would effectively be denied a meaningful day in court." Argueta, 87 F.3d at 324 (quoting Pelleport Investors, Inc. v. Budco Quality Theatres, Inc., 741 F.2d 273, 280 (9th Cir. 1984)).

Plaintiff does not challenge the forum selection clause on the factors articulated in M/S Bremen. Plaintiff raises state law defenses to contracts which do not address the factors the Court must consider in determining whether the forum selection clause is enforceable. See e.g. Argueta, 87 F.3d at 325 (fear of prosecution was not relevant in determining reasonableness of enforcing forum selection clause).

### a. Overreaching

While Plaintiff does not explicitly apply the factors in M/S Bremen, the Court analyzes Plaintiff's unconscionable argument under the overreaching factor. See Applied Waterproofing Tech., Inc. v. American Safety Indem. Co., No. 09 cv 1040-IEG(NLS), 2009 WL 2448272, at *4 (S.D. Cal. Aug. 10, 2009) (unconscionable argument discussed under overreaching factor). Plaintiff argues that the Terms and Conditions[3] is a contract of adhesion since she had no ability to bargain with Beachbody and the agreement was presented on a "take it or leave it" basis.[4] Defendant argues that the Terms and Conditions is not unconscionable.

Federal law controls whether a forum selection clause is unconscionable. East Bay Women's Health, Inc. v. Glostream, Inc., No. C 14-00712 WHA, 2014 WL 1760989 (N.D. Cal. May 2, 2014). The Supreme Court has held that "take it or leave it" adhesion contracts do not necessarily render a forum-selection clause unenforceable. See Carnival Cruise Lines, Inc. v. Shute, 499 U.S. 585, 593-94 (1991) (rejecting court of appeals' "determination that a nonnegotiated forum-selection clause in a form ticket contract is never enforceable simply because it is not the subject of bargaining."). The Ninth Circuit has held that unequal bargaining power does not render a forum selection clause unenforceable. Murphy, 362 F.3d at 1141. Murphy involved an employment contract and the court noted that if the contract was not negotiable and the plaintiff opposed the forum selection clause, the plaintiff had the opportunity to seek work elsewhere. Id. "To decline enforcement of a forum selection merely on the showing of non-negotiability and power difference made by [the plaintiff] would disrupt the

---

[3] Plaintiff must show that the forum selection clause, itself, as opposed to the entire contract, is the product of fraud or overreaching. See Scherk v. Alberto-Culver Co., 417 U.S. 506, 519 (n. 14 (1974) ("it means that an arbitration or forum-selection clause in a contract is not enforceable if the inclusion of that clause in the contract was the product of fraud or coercion.") In her opposition, she improperly challenges the Terms and Conditions as a whole.

[4] Plaintiff cites mainly to cases which address unconscionability of arbitration agreements under California law or cases discussing forum selection clauses within challenged arbitration provisions. These cases are inapposite.

settled expectations of the parties here and would threaten the ability of employers to require that disputes with their employees normally be settled in their neighborhood, absent some other exigency." Id.

Here, Plaintiff's argument that the Terms and Conditions was not negotiable cannot rebut the presumption in favor of the forum selection clause. See id. Plaintiff has not raised an argument that enforcement of the clause would contravene a strong public policy of California and that plaintiff would be deprived of her day in court.

Defendant seeks to transfer this case within the state of California to the Central District of California located in Los Angeles, California, a neighboring district. As a result, Plaintiff has not argued and there does not appear to be any difficulty or inconvenience with litigating the case in Los Angeles. Moreover, Defendant's principal place of business is in Santa Monica, California.

Based on the M/S Bremen factors, the Court concludes that Plaintiff has failed to bear the "heavy burden" to show that the forum selection clause is unreasonable. The Court now addresses Plaintiff's remaining arguments.

**B.    Additional Arguments**

    **1.    Illusory**

Plaintiff argues that the Terms and Conditions are illusory and unenforceable because Defendant has not really promised to do anything and consideration is lacking. Specifically, she contends that the provision that Beachbody "may update or amend these Terms and Conditions from time to time to comply with law or to meet our changing business requirements without notice to you" makes the contract illusory because of Defendant's right to amend unilaterally. Defendant opposes.

A contract is illusory if a party retains the unilateral, unrestricted right to terminate an agreement because there is no obligation to receive consent from, or even notify, the other parties to the contract. In re Zappos.com, Inc., Customer Data Sec. Breach Litigation, 893 F. Supp. 2d 1058, 1065 (D. Nev. 2012).

While Beachbody can amend the Terms and Conditions without notice to the

1  buyer, limitations apply. Plaintiff only provides the relevant provision that support her
2  position and does not provide the entire provision. The provision provides,

> We may update or amend these Terms and Conditions from time to time to comply with law or to meet our changing business requirements without notice to you. Any updates or amendment will be posted on the Sites. The Terms and Conditions displayed on the Sites at the time the order is accepted will apply to the order.

(Dkt. No. 15-6, Gelfand Decl., Ex. C at 8.)

As argued in Defendant's reply, this provision states that any modifications will be posted on the website and can be viewed by the user providing notice. Moreover, the terms of conditions that apply to a specific order are the ones that are displayed "at the time the order is accepted." Therefore, the Terms and Conditions that applied to Plaintiff's order in April 2013 cannot be unilaterally changed. Accordingly, Plaintiff's argument is without merit.

### 2.   False Advertising Dispute

Plaintiff argues that Defendant has not shown that a valid forum selection clause governs the false advertising claims in this case because Beachbody only provided "Team Beachbody Terms and Conditions", not "Beachbody Purchase Terms and Condition" which are both provided in the hyperlink when Plaintiff pressed the "Place Order" button. She contends that the Terms and Conditions only apply to "any action at law or inequity arising out of or relating to the Terms and Condition or your use of the Sites" and not to any purchases. (Dkt. No. 15-6, Gelfand Decl., Ex. C at 18.) Defendant argues that the Team Beachbody Terms and Conditions applies to any purchases of products.

The relevant Terms and Conditions state,

> BY USING THIS WEB SITE OR ANY WEB SITE OF BEACHBODY, LLC, AND TEAM BEACHBODY, AND/OR *PLACING AN ORDER* FOR BEACHBODY, LLC'S, PRODUCTS OR SERVICES, YOU AGREE TO BE BOUND AND ABIDE BY THESE TERMS AND CONDITIONS AND ANY AMENDMENTS THERETO . . . .

(Dkt. No. 15-6, Gelfand Decl., Ex. C at 2) (emphasis added). In addition, it provides,

> The Terms and Conditions constitute the entire agreement between

> Beachbody and you with respect to your use of the Sites, your *purchase of products and services through the Sites, and as applicable any products or services of Beachbody.*

(Id. at 19) (emphasis added).

The "Team Beachbody Terms and Conditions" apply to purchases made on the website, and therefore applies to the issues in this case. Accordingly, Plaintiff's argument is without merit.

### 3. Phone Purchase

Plaintiff argues that since the forum selection clause does not apply to the entire dispute, the court should deny the motion to transfer. Defendant argues that Plaintiff's subsequent telephone order for only Fill & Freeze should not negate her agreement to the Terms and Conditions.

In support, Plaintiff cites to one Ninth Circuit case where the Court held that an arbitration clause, in the first agreement, did not govern a dispute based on a subsequent agreement. Int'l Ambassador Program, Inc. v. Archexpo, 68 F.3d 337, 340 (9th Cir. 1995). In that case, the court had to determine whether the April agreement and the July agreement were separate or interrelated agreements. Id. The April agreement had an arbitration provision while the July Agreement did not. Id. at 339. The court concluded that the two agreements were independent and that the arbitration clause in the April agreement did not control the subsequent July agreement between the parties. Id. The court noted that the "agreements concerned two separate types of tours and completely different groups of tourists" and the proof required to establish the arbitration claims under the April agreement had nothing to do with the dispute under the July agreement." Id.

Here, Plaintiff initially placed her order on-line and subsequently renewed it. (Dkt. No. 15-2, Gelfand Decl. ¶ 4; Dkt. No. 19-1, Crawford Decl. ¶¶ 3-5.) She states that when her order automatically renewed, she called to cancel. (Dkt. No. 19-1, Crawford Decl. ¶ 5.) During the call, the customer service representative cancelled her order that was automatically renewing. (Id.) In that same phone call, Plaintiff was

1  convinced to purchase the Fill & Freeze product alone instead of the four piece system.
2  (Id.)
3        The Court concludes that the case cited by Plaintiff does not support her
4  argument because the phone purchase of the Fill & Freeze product appears to be an
5  extension of her online purchase.  They did not involve two separate and independent
6  transactions involving different products.  Moreover, the Court notes that her
7  Complaint is based on her initial purchase of Fill & Freeze which she purchased online
8  through the Beachbody website.  Therefore, the Terms and Conditions apply to her
9  case.  Even if the forum selection clause did not apply to the one phone purchase order,
10 it should not negate the application of the forum selection clause in this case since the
11 crux of her case is based on the initial online purchase.  See Vision Tech. Design &
12 Mfg. v. General Wire Spring Co., No. CV–F–07–412 OWW/WMW, 2007 WL
13 2069945, at *8 (E.D. Cal. July 17, 2007) (declining to enforce forum selection clause
14 contained in purchase orders where "not all of [plaintiff's] claims are based on breach
15 of the purchase orders and [plaintiff's] claim for declaratory relief as to an intellectual
16 property dispute is not based on a contract resulting from a purchase order."); Pegasus
17 Transp. Inc. v. Lynden Air Freight, Inc., 152 F.R.D. 574, 577 (N.D. Ill.1993) (declining
18 to enforce forum selection clause where clause did not apply to over half of the
19 plaintiff's claims).  Therefore, the Court concludes that the forum selection clause is
20 enforceable.

21 **C.    Plaintiff's Motion to Strike Affirmative Defenses**

22       Because this case will be transferred to the Central District of California, the
23 Court denies Plaintiff's motion to strike affirmative defenses without prejudice.
24 Plaintiff may re-file the motion in the appropriate forum after this case is transferred.

25 **Conclusion**

26       The Court GRANTS Defendant's motion to change venue and transfer the case
27 to the Central District of California.  The Court also DENIES WITHOUT PREJUDICE
28 Plaintiff's motion to strike affirmative defenses so that she may re-file the motion in

the Central District of California. The hearing set for November 7, 2014 shall be **vacated**.

IT IS SO ORDERED.

DATED: November 5, 2014

HON. GONZALO P. CURIEL
United States District Judge